ESTATE OF MIHELCIC (Anton): MIHELCIC (Sylvia), Appellant, v. INDUSTRAL ROOFING & INSULATION COMPANY, Respondent.

*No. 299.  Argued March 5, 1974.—Decided April 2, 1974.*
(Also reported in 216 N. W. 2d 245.)

34

For the appellant there was a brief and oral argument by *Max E. Geline* of Milwaukee.

For the respondent there was a brief by *Brendel, Flanagan & Sendik, S. C.,* attorneys, and *Thomas R. Fahl* of counsel, all of Wauwatosa, and oral argument by *Mr. Fahl.*

HEFFERNAN, J.   It is argued by the respondent corporation that the appeal came too late, because the personal representative did not appeal from the judgment within the sixty-day limit prescribed by sec. 879.27 (3), Stats., which is applicable to appeals from orders or judgments of the probate court.  The record shows, however, that on December 21, 1972, the appellant obtained an order, as provided by sec. 879.31, extending the time for appeal. That statute provides:

"879.31   **Extension of time for appeal; retrial.**   If any person aggrieved by any act of the probate court shall omit to take his appeal within the time allowed without fault on his part, the court may, upon his petition, notice to the adverse party, and hearing, and upon terms and within the time it deems reasonable, but not later than 6 months after the act complained of, by order allow an appeal, if justice appears to require it, with the same effect as though done seasonably; or the court may reopen the case and grant a retrial."

The trial judge, after a hearing, concluded that the failure to take the appeal within the prescribed sixty days was a result of the negligence of counsel and that a default of this kind by counsel should not result in having an innocent party forfeit the right of appeal.  Although

the statute applicable in *Hernke v. Northern Ins. Co.* (1963), 19 Wis. 2d 189, 120 N. W. 2d 123, is sec. 269.45, Stats., and does not deal with the extension of time for an appeal from the probate court, the discussion is relevant to the instant case and demonstrates the broad sweep of a trial judge's discretion to exonerate a party from the consequences of his counsel's negligent failure to act within a prescribed period.

The trial judge herein carefully weighed the facts and demonstrated a considered exercise of discretion before ordering an extension of time for the appeal.

Under the circumstances, the appeal was timely taken. We stated in the *Estate of Steuber* (1955), 270 Wis. 426, 431, 71 N. W. 2d 272, that a petition for an extension of time to appeal a matter in probate "is addressed to the discretionary powers of the court whose determination will not be reversed except for an abuse of discretion."

Although Industrial contends that there was an abuse of trial court discretion, we do not agree. We have repeatedly stated that the statute is to be liberally construed. Even the respondent herein acknowledges that *Estate of Trimpey* (1950), 257 Wis. 481, 44 N. W. 2d 308, and *Will of Loewenbach* (1933), 210 Wis. 253, 246 N. W. 332, stand for the proposition that the statute "should be liberally construed and that defaults incurred through negligence of counsel are to be relieved against." *Trimpey,* pages 483, 484.

In reviewing a discretionary act of a trial judge, we strive to sustain the decision and will do so if it is apparent that the trial judge exercised his discretion on the basis of relevant consideration of fact and law. There is no evidence that Sylvia Mihelcic exercised anything but good faith in bringing the appeal, and it is evident that she was not aware of the time limit required by the statute. Under these circumstances, it was within the said discretion of the trial judge, relying on cases previously decided by this court, to relieve the innocent party

of her attorney's negligence and to permit the appeal. We see no abuse of discretion, and the appeal is timely taken.

The evidence is undisputed that record title was in the corporation at all times. The broker who sold the property did so with the understanding, as evidenced by the instructions for the deed, that the sale was made to the corporation. The record shows that Anton Mihelcic was serving the corporation's purpose in purchasing land it needed for its corporate activities.

For the estate to prevail in this proceeding it must demonstrate that it had title in its own right, and it cannot rely upon infirmities and defects that cast doubt upon the rights of the title holder of record. The rule applicable in quiet title actions is appropriate here. In *Brody v. Long* (1961), 13 Wis. 2d 288, 292, 293, 108 N. W. 2d 662, this court said:

"In order for the plaintiffs to prevail in this action to quiet title on the merits they must do so upon the strength of their own title and not the weakness of the defendants' title."

In *Saletri v. Clark* (1961), 13 Wis. 2d 325, 331, 108 N. W. 2d 548, this court said:

"When a plaintiff has no title, his complaint in an action to quiet title must be dismissed irrespective of the validity of the title of the defendant."

The estate attempts to prove title by two transactions. It alleges that there is evidence to show that, at the time the lots were purchased, one half of the property was purchased for Anton's own use and that by Anton's subsequent payment in 1958 of $1,500 and the ratification of "all acts . . . by the officers" in the corporate resolution of 1959, the remaining half of the property vested in Anton.

Neither of these transactions are probative of any title in Anton Mihelcic or his personal representative. It is

baldly asserted by the personal representative that the two receipts given in 1947 and 1948 which acknowledged that the sums were "Received of A. Mihelcic" give rise to the presumption that the money was his and not the corporation's. The trial judge made the finding of fact that the transaction did not show the source of the money. This is a finding that must be sustained unless it is contrary to the great weight and clear preponderance of the evidence. There is no evidence to show the source of the money.

The giving of a receipt only evidences that the money was paid by a particular person. It creates no presumption whatsoever in respect to the source of that money. No authority has been cited by the personal representative that would give such effect to the receipts. The independent research of this court has failed to find such authority. A receipt is only probative of the fact that the recipient has received a sum of money and that the money was paid over by the named person. Accordingly, nothing in the transaction dispels the understanding of the parties that the purchase was made for the corporation. The fiduciary relationship of Anton Mihelcic to the corporation can only compel the conclusion that if he was acting lawfully he was acting as the agent for the corporation.

Additionally, the estate argues that, irrespective of Anton's original authority, the transaction whereby he purported to change the corporate books for the purpose of showing his ownership of the property was ratified by the resolution of the directors and stockholders on March 2, 1959. The record shows, however, that no deed was executed by Anton Mihelcic or any other officer on behalf of the corporation purporting to convey the title to the property. Accordingly, it is urged by the personal representative that the resolution ratified an act that in fact never occurred. Additionally, the resolution adopted was totally ineffective to ratify any act of an officer,

because the stockholders and directors other than possibly Anton were totally ignorant of the conduct they were ratifying. If Anton Mihelcic intended to transfer title of corporate property from the corporation to himself, he was indulging in self-dealing, which in the absence of the full knowledge and contemporary approval of the other directors constituted a voidable and ultra vires act. If, as the representative of the estate argues, the ratification was intended to approve an illegal act which had been concealed from the corporation, the deceit was compounded. We cannot, however, presume on the basis of the self-serving statements of the personal representative that Anton intended by the passage of this resolution to have ratified any illegal conduct. We do not know Anton's purpose, and it is strange indeed that the appellant, who contends that Anton was an honest man, construes the facts, without support in the record, to show that Anton by a course of deceitful self-dealing, conveyed corporate property to himself. There is no evidence to show that the ratification resolution was intended by Anton Mihelcic for that purpose. None of the directors who testified were aware that Anton Mihelcic had the ulterior purpose that his estate now asserts.

In *McDermott v. O'Neil Oil Co.* (1930), 200 Wis. 423, 228 N. W. 481, the president of the corporation personally purchased assets of the corporation in a plan which had been approved by the majority of the stockholders. The dealings of the president of that corporation were approved by this court. We said:

"Mr. O'Neil, having purchased all of the assets of the corporation of which he had so many years been president, had the burden of establishing that he acted throughout with the utmost fidelity and good faith to protect the interests of the stockholders." (P. 427)

The evidence of good faith was spread on the record in that case, and his proposed course of conduct was fully explained to the stockholders prior to any action taken.

This court has repeatedly emphasized that officers and directors of a corporation owe a fiduciary duty to the stockholders. *Rose v. Schantz* (1972), 56 Wis. 2d 222, 228, 201 N. W. 2d 593; *Grognet v. Fox Valley Trucking Service* (1969), 45 Wis. 2d 235, 241, 172 N. W. 2d 812. No evidence was offered to show that, if Anton's purpose was as contended by his personal representative, he made any disclosure of his self-dealings to the other stockholders. *See also:* Ballantine, *Corporations* (rev. ed., 1946), p. 178, sec. 71, and *Frey v. Geuder, Paeschke & Frey Co.* (1958), 4 Wis. 2d 257, 275, 90 N. W. 2d 765, 92 N. W. 2d 758.

A general ratification by a corporate board or by stockholders of the acts of officers and directors is discussed in *Atlas Coal Co. v. Jones* (1953), 245 Iowa 506, 61 N. W. 2d 663. In that case, two officers had attempted to purchase a valuable lease from the corporation. They failed to fully inform the stockholders of the facts surrounding the sale. However, a resolution was adopted which stated, "Resolved that all actions of the officers and directors during the past corporate year shall be ratified, approved and confirmed."

The Iowa court held that this resolution was ineffective. The court relied upon the well-accepted rule of law that stockholders are not bound by a general ratification of prior acts of officers or directors unless they have had specific knowledge of the acts ratified. We accept that statement of the law.

The record does not indicate the purpose of the ratification in the instant case. It is but an assumption on the part of the present personal representative that the resolution was for the purpose of concealing an act that

was detrimental to the corporation and for Anton's personal interest. There is nothing in the record to show that Anton acted from such dishonest motives.

In any event, the two evidentiary underpinnings relied upon by the representative of the estate are completely nonprobative. The giving of the receipts merely proves that money was paid and not the source of the money. The general ratification, if it was intended to approve of Anton's self-dealing, was totally ineffective and void, as is any general ratification when specific knowledge of the acts to be ratified is withheld from the stockholders or the board of directors.

No title or interest in the land was ever conveyed as required by law. It is equally clear that in equity none of the circumstances urged by the estate would give rise to property rights in Anton and his personal representative.

The corporation is not estopped from asserting its title. Its title is clear on the record, and estoppel can only take place when the party who is claimed to be estopped knowingly permits a course of conduct and acquiesces in certain action which would be detrimental to the other party if estoppel were not invoked. As we said in *Bratt v. Peterson* (1966), 31 Wis. 2d 447, 454, 143 N. W. 2d 538:

"Estoppel consists of action or nonaction on the part of the one against whom the estoppel is asserted . . . which induces reliance by another . . . either in the form of action or nonaction, to the detriment of the latter . . . ."

The undisputed evidence shows that the other corporate officers and stockholders were ignorant of Anton's claimed conduct. Nothing the corporation did induced reliance by Anton. A claim that any conduct of the corporation or of any other stockholder induced Anton to undertake the course of conduct ascribed to him by

his estate is contradicted by the record. Anton was the the only stockholder who knew the business transactions of the corporation. The estoppel doctrine is inappropriate to these facts.

The record shows that Anton Mihelcic paid real estate taxes on the property from 1958 to the time of his death. He also paid an additional $1,000, which equalled the amount of the corporate check given at the time of the corporation's completion of payment for the purchase price.

Title remained in the corporation. However, on the basis of the facts of this record, it may well be that the estate has a claim for the $1,500 paid by Anton to the corporation and for the taxes on the property subsequently paid.

The resolution of that dispute is, however, not germane to the case before us. The record shows that the surviving stockholders of the corporation have made overtures to settle any possible claims but have been unable to do so as of the time of this appeal. If the personal representative concludes that a claim should be brought against the corporation for the sum of money by which it was allegedly unjustly enriched, it is within her discretion to to do so. Whether such claim can now be allowed in law must be determined by the trial court.

We find no basis for the estate's claim of title, and the trial court correctly found that title remained in the corporation by virtue of the 1948 deed.

*By the Court.*—Judgment affirmed.