Harold A. HOPPENRATH, Jr., Plaintiff in error-Petitioner,

v.

STATE of Wisconsin, Defendant in error.†

Supreme Court

*No. 78-433-CR. Argued May 7, 1980.—Decided June 27, 1980.*

(Also reported in 293 N.W.2d 910.)

† Motion for reconsideration denied, without costs, on August 11, 1980. ABRAHAMSON and STEINMETZ, JJ., took no part.

For the plaintiff in error-petitioner the cause was argued by *William J. Tyroler,* assistant state public defender, with whom on the briefs was *Richard L. Cates,* state public defender.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

COFFEY, J. The defendant, Harold A. Hoppenrath, seeks review of a writ of error filed challenging the appellate court's refusal to consider his appeal of a motion to suppress, after a finding of not guilty by reason of mental disease or defect, of the crime of second degree murder. Following the trial, the defendant was committed to the Department of Health & Social Services with the Central State Hospital designated as the reception center. The defendant did not attack the validity of the commitment order to the Department of Health & Social Services in the court of appeals, but sought only review of the orders denying his right to appeal his pretrial motions, pursuant to sec. 971.31(10), Stats.[1]

On March 3, 1977, the defendant was arrested and charged with the crime of first degree murder in the shooting death of his father, Harold R. Hoppenrath. After the defendant was arrested and advised of his constitutional rights, he admitted that he had entered his father's house, went into his father's bedroom and shot him five (5) times with a .25 caliber semi-automatic pistol. The defendant informed the police of the loca-

---

[1] "971.31  **Motions before trial.** . . .

"(10) An order denying a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a judgment of conviction notwithstanding the fact that such judgment was entered upon a plea of guilty."

tion of the murder weapon and the spent casing shells and told the officers how he had test fired the gun prior to the shooting.

At the defendant's initial appearance, the appointed counsel informed the court that he believed the defendant was "unable to understand the proceedings against him or to assist in his own defense." The court, being so advised, held a hearing to determine the defendant's competency to proceed to trial, under sec. 971.14(1), Stats.[2] After hearing the testimony, the court found probable cause to believe that the defendant had committed the crime charged and that he "is probably suffering from mental disease or defect and is unable to aid in his own defense." The court, pursuant to sec. 971.14 (2), Stats.,[3] committed the defendant to the Central

[2] "971.14 **Examination of defendant with respect to competency to proceed.** (1) Whenever there is reason to doubt a defendant's competency to proceed, the court shall:

"(a) Hold a hearing to establish whether it is probable that the defendant committed the crime charged, except that if he has previously been bound over for trial after a preliminary examination or has been adjudged guilty but has not been sentenced, such hearing shall not be necessary.

"(b) If the defendant is without counsel, provide him with the right to cross-examine state's witnesses and to call witnesses on his own behalf.

"(c) At the conclusion of the hearing required by par. (a), make a finding on the issue of probable guilt.

"(d) If the finding is in the affirmative, then proceed to determine the defendant's competency to proceed.

"(e) If the finding is that the state has failed to prove the probability that the defendant has committed the crime charged, discharge the defendant, but the court may temporarily detain him so as to permit civil proceedings to be instituted under ch. 51 to determine his mental competency."

[3] "971.14 . . .

"(2) When probable cause has been established pursuant to sub. (1), the court shall appoint at least one physician to examine and report upon the condition of the defendant. In lieu of such appointment, or in addition thereto, the court may order the defendant committed to a state or county mental health facility or other

State Hospital for a "mental, social, psychiatric, psychological and neurological examination. . . ."

Following the medical, social and psychiatric examinations, the Central State Hospital authorities filed a report with the court stating that the defendant was not competent to proceed to trial because he was unable to understand the proceedings against him, nor the nature of the crime charged and, further, could not assist in his own defense. The defendant challenged the hospital report, thus requiring the court to conduct a hearing. At the hearing, the state psychiatrist and the court appointed psychiatrist testified, to a reasonable degree of medical certainty, that the defendant was suffering from a mental illness described as "schizophrenia paranoid type" and at this time he was unable to understand the proceedings against him or assist in his own defense. The defendant disputed the psychiatrists' findings and stated "I am presently capable of defending myself in this trial." The court, after the hearing, found the defendant to be "a person who as a result of mental disease or defect is unable to understand the proceedings against him or to assist in his own defense" and ordered him committed to the Central State Hospital "until such time as he shall have recovered."

Less than eight months after his commitment, on November 2, 1977, the hospital filed a report with the

suitable facility for the purpose of examination for a specified period not to exceed 60 days. At the conclusion of the examination, the physician who examined the defendant, or the facility to which the defendant was committed, or the department if committed to a state institution, shall forward a written report of such examination in triplicate to the clerk. The report of the examination shall include:

"(a) A description of the nature of the examination;

"(b) A diagnosis of the mental condition of the defendant;

"(c) If the defendant suffers from a mental disease or defect, an opinion as to his capacity to understand the proceedings against him and to assist in his own defense."

court, under sec. 971.14(2), Stats., stating "this man has improved sufficiently to understand the proceedings against him and to assist in his own defense" and neither the defendant nor the state challenging this finding. Approximately two weeks later the preliminary hearing was held and the court, after finding the defendant probably committed the crime charged, bound him over for trial.

An information was filed charging the defendant with first degree murder and he entered pleas of not guilty and not guilty by reason of mental disease or defect at the time of the offense.

Prior to trial the defendant filed a number of motions to dismiss the action, including a motion to suppress his oral and written confessions and the physical evidence (gun and spent casing shells) recovered as a result of the confessions. In his motion to suppress he alleged that:

1. the court lacked jurisdiction over the defendant as the police stopped Hoppenrath without probable cause and in violation of art. 1, sec. 11 of the Wisconsin Constitution and the 4th, 5th and 14th Amendments to the United States Constitution;

2. the oral and written confessions given by the defendant and also providing the basis for his arrest and the criminal complaint filed against him were illegally obtained and in violation of his constitutional rights;

3. the pistol and two spent casing shells were recovered as a result of the information gained in the oral and written confessions given to the police in violation of the defendant's constitutional rights. Thus, this evidence should be suppressed as "fruit of the poisonous tree."

Following an evidentiary hearing and the trial court's denial of all the defendant's motions to dismiss, including the motions to suppress his confessions and the other physical evidence, Hoppenrath, with his attorney, nego-

tiated a plea bargain with the state allowing him to enter a plea of guilty to the crime of second degree murder. The state then filed an amended information and the defendant entered a combined plea of guilty to the amended information and a special plea of not guilty by reason of mental disease or defect at the time of the offense and waived his right to a jury trial. The court accepted the defendant's guilty plea to second degree murder after determining that the plea was entered freely, knowingly and voluntarily.

During the insanity phase of the trial, both defense psychiatrists and the court appointed psychiatrist testified that in their opinion, to a reasonable degree of medical certainty, the defendant was "mentally ill," and was "suffering from a paranoid schizophrenia" type of mental illness at the time of the commission of the crime. They also stated that as a result of this mental illness the defendant "lacked substantial capacity to conform his conduct to the requirements of the law or to appreciate the wrongfulness of his conduct." Moreover, they testified that the defendant was "mentally ill" at the time of the commission of the offense and that he presently is suffering from the same "mental illness". They further stated that he is a danger to himself or others and was in need of institutional custody, care and treatment. The trial court, agreeing with the psychiatrists, found:

"That at the time that this offense occurred at the hands of this defendant, the defendant was suffering from schizophrenia, paranoid type, a mental disease or illness and as a result of that mental illness, lacked substantial capacity to conform his conduct to the requirements of the law, and therefore the court will find him not guilty by reason of mental illness."

Secondly, the court found, based on the testimony of the psychiatrists, that:

". . . the defendant is now mentally ill and is a danger to himself and to others and is a proper subject for care and custody in an institution."

and ordered the defendant, in compliance with sec. 971.-17(1), Stats., committed to the Department of Health and Social Services, with the Central State Hospital designated as the reception center, until discharged in accordance with the law.

The defendant, Harold A. Hoppenrath, Jr., *filed a writ of error with the court of appeals to review the court's suppression order denying his motion to suppress the introduction of his confessions and certain physical evidence* through an appeal of the commitment order. The court of appeals affirmed the commitment order without reaching or considering the merits of the suppression order as the court held that it had no jurisdiction to review the order denying the motion to suppress as no *judgment of conviction* had been entered in this case for an appeal, pursuant to sec. 971.31(10), Stats.[4] The defendant has now petitioned this court for a review of the court of appeals' decision.

*Issue*

Was the court of appeals in error in ruling that it lacked jurisdiction to consider the defendant's writ of error requesting a review of the trial court's order denying his motion to suppress his confession and other physical evidence because the principal appeal was not taken from a judgment of conviction?

The defendant-petitioner contends that the court of appeals erred in holding that it lacked jurisdiction to consider the order denying the suppression motion. Specifically, the defendant contends that a finding of not guilty by reason of mental disease or defect, and the subsequent commitment to a mental institution, is the equivalent of a judgment of conviction on the crime charged

---

[4] "971.31   **Motions before trial.** . . .

"(10) An order denying a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a judgment of conviction notwithstanding the fact that such judgment was entered upon a plea of guilty."

and thus, he contends that sec. 971.31(10), Stats.,[5] allows a review from an order denying a motion to suppress evidence. Further, he contends that even if the circumstances of the defendant's case do "not come within the express terms of sec. 971.31(10), Stats., this court can, and should, alter the judicially created rule of waiver of right to review constitutional claims upon entry of a guilty plea, so as to give the effect to the policy behind secs. 971.31(10) and 971.06(1)(d) [to allow an appeal]—deterring unnecessary trials."

Sec. 971.31(10), Stats., entitled Motions before trial, allows a defendant to obtain review of an order denying a motion to suppress evidence "upon appeal from a *judgment of conviction* notwithstanding the fact that such judgment was entered upon a plea of guilty." Therefore, relying on the express language of the statute, the court of appeals held that it lacked appellate jurisdiction to review the order denying the motion to suppress because the principal appeal was not taken from a judgment of conviction. The first question presented in this case is whether a finding of not guilty by reason of mental disease or defect constitutes a judgment of conviction as defined in the statute.

Sec. 967.02(8), Stats., defines a "judgment" for purposes of the Criminal Procedure statutes as:

". . . an adjudication by the court that the defendant is *guilty or not guilty.*" (Emphasis supplied.)

In addition, sec. 972.13(1), Stats., provides that a *"judgment of conviction shall be entered upon a verdict of guilty by the jury,* a *finding of guilty by the court* in cases where a jury is waived, or a *plea of guilty or no contest."* (Emphasis supplied.) In this case the defendant, Hoppenrath, was adjudicated to be *not guilty by reason of mental disease or defect* and was, in effect, acquitted, and thus stands unconvicted of any crime.

---

[5] *See:* fn. 4.

Furthermore, in sec. 972.13(2), Stats.,[6] the legislature has seen fit to direct the courts that upon entering a *judgment of conviction,* the court shall either "impose or withhold sentence and, if the defendant is not fined or imprisoned, the defendant shall be placed on probation. . . ." In this case the defendant was not sentenced to confinement, fined or placed on probation because these sentencing alternatives are only available to a court after a finding of guilty and are not available after a finding of not guilty by reason of mental disease or defect. Rather than sentencing the defendant, the trial court in compliance with the statute reviewed the evidence in order to make a finding as to whether the defendant was presently suffering from a mental disease or defect and in need of institutionalized treatment, because he was a danger to himself or to others. Only after an affirmative finding was the defendant committed.

It should be noted that sec. 971.17(2), Stats.,[7] provides a defendant, committed to a mental institution under sec. 971.17(1), with the right to apply for periodic reexam-

---

[6] Sec. 972.13(2), Stats., reads as follows:

"(2) Except in cases where ch. 975 is applicable, upon a judgment of conviction the court shall either impose or withhold sentence and, if the defendant is not fined or imprisoned, the defendant shall be placed on probation as provided in s. 973.09. The court may adjourn the case from time to time for the purpose of pronouncing sentence."

[7] "971.17 **Legal effect of finding of not guilty because of mental disease or defect.** (1) . . .

"(2) A reexamination of a defendant's mental condition may be had as provided in s. 51.20(16), except that the reexamination shall be before the committing court and notice shall be given to the district attorney. The application may be made by the defendant or the department. If the court is satisfied that the defendant may be safely discharged or released without danger to himself or herself or to others, it shall order the discharge of the defendant or order his or her release on such conditions as the court determines to be necessary. If it is not so satisfied, it shall recommit him or her to the custody of the department."

inations of his mental condition. Application for reexaminations may be made every 120 days. *See:* sec. 51.20 (16) (a) and (c), Stats.[8] If the court finds that the defendant's mental condition has improved to such a degree that he "may be safely discharged or released without danger to himself or herself or to others, it shall order the discharge of the defendant or order his or her release on such conditions as the court determines to be necessary." Therefore, the defendant could be committed to an institution for as short a period as 38 to 120 days[9] or for as long a period as the defendant ". . .

[8] Sec. 51.20 (16) (a) and (c) provide as follows:

"(a) Except in the case of alcoholic commitments under s. 51.-45(13), any patient who is involuntarily committed for treatment under this chapter, may on the patient's own verified petition, except in the case of a minor who is under 14 years of age, or on the verified petition of the patient's guardian, relative, friend, or any person providing treatment under the order of commitment, request a reexamination or request the court to modify or cancel an order of commitment.

"(c) If a hearing has been held with respect to the subject individual's commitment within 30 days of the filing of a petition under this subsection, no hearing shall be held. If such a hearing has not been held within 30 days of the filing of a petition, but has been held within 120 days of the filing, the court shall within 24 hours of the filing order an examination to be completed within 7 days by the appropriate board under s. 51.42 or 51.437. A hearing may then be held in the court's discretion. If such a hearing has not been held within 120 days of the filing, a hearing shall be held on the petition within 30 days of receipt."

[9] Sec. 51.20 (16), Stats., provides that where a reexamination hearing has not been held within 30 days of the filing of the petition with the court, but has been held within 120 days of the filing—the court must, within 1 day thereafter, order an examination that must be completed within 7 days. The court may then hold a hearing on the defendant's mental condition and he may be released if cured. Thus, the reexamination process could be completed within as short a period as 38 days. Otherwise, a defendant may compel a reexamination "after 120 days of the preceding examination."

could have been imprisoned *if convicted of the offense charged. . . ."* (Emphasis supplied.) Sec. 971.17(4), Stats.

The defendant argues that he is confined as a result of the finding of not guilty by reason of mental disease or defect, and this adjudication should be considered as the practical equivalent of a judgment of conviction. He states that the commitment to a mental institution has an adverse impact on him as it results in a loss of liberty similar to a prison sentence following a finding of guilty as to the crime charged. However, it should be pointed out that the defendant, Hoppenrath, was committed to an institution not because he had been found guilty and convicted of a crime, but rather it was because the court found him to be "mentally ill" and "presently dangerous to others and that he is a fit subject for institutionalization." If he had been found not guilty because of mental disease or defect but had been found not presently suffering from a mental illness or defect and not a danger to himself or others and not in need of hospitalization, the court would have been without authority to order commitment.

Secondly, in sec. 972.13(1), Stats., the legislature expressly mandates the four limited situations where a judgment of conviction shall be entered:

1. when there is a verdict of guilty by the jury;

2. when there is a finding of guilty by the court where a jury is waived;

3. when there is a plea of guilty (if accepted by the court) ; and

4. when there is a plea of no contest (if accepted by the court).

We find the language of sec. 971.13(1), Stats., to be clear and unambiguous on its face. In *State v. Engler,* 80 Wis.2d 402, 259 N.W.2d 97 (1977), this court held

that we should not search for legislative intent where the legislation is clear and unambiguous: " 'It is impermissible to apply rules of statutory construction [judicial interpretation] to ascertain legislative intent *when the legislation is clear on its face.*' " (Emphasis supplied.) *Id.* at 406. Moreover, in *State ex rel. Neelen v. Lucas,* 24 Wis.2d 262, 128 N.W. 425 (1964) this court held:

> "A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses. There is no ambiguity in the literal terms of the provision under consideration and it is often said that when the words are plain there is no room for judicial construction.
>
> "A court may also enlarge or restrict in meaning some of the words of a statute in order to harmonize them with the manifest legislative intent of the entire statute.
>
> "An obscurity of meaning may also exist, and call for judicial construction where the literal sense of the statutory language would work an absurd result.
>
> "Primarily, however, the meaning must be read from the language chosen by the legislature, and the *courts are not free to determine whether different provisions would have been enacted if the legislators had given some or greater attention to the application of the statute upon a particular set of facts.*" (Emphasis supplied.) *Id.* at 267–68.

Therefore, we hold that the language of sec. 972.13(1), Stats., clearly and unambiguously establishes that a finding of not guilty by reason of mental disease or defect does not constitute a judgment of conviction. Therefore, we agree with the trial court and the court of appeals that since no judgment of conviction was entered in this case, we hold that sec. 971.31(10) was inapplicable.

Having determined that sec. 971.31(10), Stats., did not grant a right of review in this case, we must consider a second question. Is an order denying a motion for suppression, entered in the underlying criminal proceeding, reviewable on appeal from an order of commitment to a mental institution, following a finding that

the defendant is not guilty by reason of mental disease or defect, and a further finding that he is presently mentally ill, and in need of institutionalization because he represents a danger to himself or to others?

In *State ex rel. Kovach v. Schubert*, 64 Wis.2d 612, 219 N.W.2d 341 (1974), this court held that it was a denial of equal protection of the laws to provide for an automatic commitment of persons found not guilty of crime by reason of insanity. These persons were held to be entitled to the same safeguards afforded those committed under the Mental Health Act, ch. 51, Stats. The court relied on *State ex rel. Farrell v. Stovall*, 59 Wis.2d 148, 207 N.W.2d 809 (1973), holding that commitments under the Sex Crimes Act were not merely sentencing alternatives, but were separate and independent proceedings from that of the criminal conviction. It follows from the court's discussion of *Farrell* that a commitment after a finding of not guilty by reason of insanity is independent of the criminal action from which the commitment arose. The only practical effect of acquittal arising from a finding of not guilty by reason of insanity is that a mental commitment proceeding is triggered without the necessity of filing a petition. The issue on review of an order for commitment is whether the evidence is sufficient to show that the person committed is presently suffering from a mental illness or defect and in need of institutionalized treatment because he is a danger to himself or to others. Evidence of his prior acts is relevant only insofar as it can be relied on to predict his future conduct. The question of competency to waive the constitutional right against self-incrimination and the constitutional right to the assistance of counsel is not involved at this stage of the proceedings, because the defendant's statements can never again be the basis of a criminal prosecution against him. In this case, the statements are irrelevant because

the trial court based its conclusion that the defendant was in need of institutionalized treatment entirely on the testimony of the examining psychiatrists. The psychiatrists did not base their testimony on the statements which the defendant gave to the police following his arrest.

This court has defined an intermediate order as one which may be reviewed upon an appeal from a judgment. *State ex rel. Van Dyke Ford, Inc. v. Cane,* 70 Wis. 2d 777, 235 N.W.2d 672 (1975). In no sense is the suppression order in this case intermediate to the order of commitment. The latter order stands on its own, independent of the criminal proceedings, which were concluded by the acquittal of the defendant on the ground he was not guilty by reason of mental illness or defect.

In this case the defendant is requesting the court to grant a right of appeal from a not guilty finding. Initially, we note that the defendant is not aggrieved by a finding in his favor. What the defendant would have this court do is engage in judicial legislation and create a new right of appeal from findings of *not guilty* by reason of mental disease or defect. In *State v. Jakubowski,* 61 Wis.2d 220, 212 N.W.2d 155 (1973), this court held that:

"The right to appellate review is a statutory right and, absent a statutory provision to that effect, no appeal may be had.

" '. . . [T]his court has appellate jurisdiction only as allowed by statute, and only to the extent the statute allows. If a case appealed to this court does not come within the terms of a statute allowing such appeal, this court has no jurisdiction to do anything other than dismiss the appeal, . . .' *State v. Omernik* (1972), 54 Wis.2d 220, 222, 194 N.W.2d 617." *Id.* at 223.

This court is without authority to fashion a new appellate remedy and thus we decline to judicially create such a right to appeal and note that it is the legislature's re-

sponsibility when it sees fit in the proper cases to amend the statute and create another right of appeal.

Therefore, in view of the fact that the order denying the defendant's suppression motion was not reviewable pursuant to sec. 971.31(10), Stats., we agree with the court of appeals' ruling that it lacked jurisdiction to consider the defendant-petitioner's, Hoppenrath, writ of error requesting review of that order.

*By the Court.*—Decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). I dissent because I think the majority errs in concluding that the court of appeals has no jurisdiction in this case. The majority reaches this conclusion because it erroneously treats sec. 971.31(10), Stats.,[1] as if it governs the appellate jurisdiction of the court of appeals and erroneously treats this appeal as if it were taken from an order denying a motion to suppress.

Sec. 971.31(10), Stats., neither grants the defendant a right to appeal from an order denying a motion to suppress, nor grants jurisdiction to the court of appeals to hear an appeal from an order denying a motion to suppress. Sec. 971.31 is part of ch. 971 which is entitled "Proceedings Before and At Trial;" ch. 971 is not concerned with proceedings on appeal. Sec. 971.31 is captioned "Motions Before Trial." As I shall explain later, sec. 971.31(10), Stats., gives the accused the opportunity to obtain appellate review of an order denying

---

[1] Sec. 971.31(10), Stats., provides:

"(10) An order denying a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a judgment of conviction notwithstanding the fact that such judgment was entered upon a plea of guilty."

motion to suppress, if the defendant has perfected an appeal.

Although the majority opinion would lead one to believe that the defendant has appealed from the order denying his motion to suppress evidence and that the defendant "did not attack the validity of the commitment order in the court of appeals" (slip opinion p. 1), the facts are otherwise. The defendant is attacking the validity of the order committing him. He brought a writ of error to review the circuit court's order committing him to the Department of Health and Social Services pursuant to sec. 971.17, Stats.,[2] by reason of the court

---

[2] Sec. 971.17, Stats., provides:

"971.17 **Legal effect of finding of not guilty because of mental disease or defect.** (1) When a defendant is found not guilty by reason of mental disease or defect, the court shall order him to be committed to the department to be placed in an appropriate institution for custody, care and treatment until discharged as provided in this section.

"(2) A reexamination of a defendant's mental condition may be had as provided in s. 51.20(16), except that the reexamination shall be before the committing court and notice shall be given to the district attorney. The application may be made by the defendant or the department. If the court is satisfied that the defendant may be safely discharged or released without danger to himself or herself or to others, it shall order the discharge of the defendant or order his or her release on such conditions as the court determines to be necessary. If it is not so satisfied, it shall recommit him or her to the custody of the department.

"(3) If, within 5 years of the conditional release of a committed person, the court determines after a hearing that the conditions of release have not been fulfilled and that the safety of such person or the safety of others requires that his conditional release be revoked, the court shall forthwith order him recommitted to the department, subject to discharge or release only in accordance with sub. (2).

"(4) When the maximum period for which a defendant could have been imprisoned if convicted of the offense charged has elapsed, subject to s. 53.11 and the credit provisions of s. 973.155, the court shall order the defendant discharged subject to the right of the department to proceed against the defendant under ch. 51. If the department does not so proceed, the court may order such proceeding."

having found him not guilty by reason of mental disease or defect. The defendant is attacking the validity of the commitment order by attacking one of the underlying foundations of the order, namely, the defendant's guilt of the crime charged (except for the defense of mental disease or defect).[3] If the defendant does not admit his guilt, and if he is found not guilty of the crime (regardless of his defense of mental disease), he cannot be committed under sec. 971.17, Stats. Perhaps the defendant could be committed under a civil procedure, but not under sec. 971.17, and criminal and civil commitments are not equivalents in Wisconsin.

I conclude that the court of appeals has appellate jurisdiction in this case because the circuit court's order of commitment based on its finding that the defendant is not guilty by reason of mental disease or defect is the first and only "final order" in the criminal proceedings between the state and the defendant and is the only order

---

[3] Sec. 971.06(1), Stats., provides:

"**Pleas.** (1) A defendant charged with a criminal offense may plead as follows:

"(a) Guilty.

"(b) Not guilty.

"(c) No contest, subject to the approval of the court.

"(d) Not guilty by reason of mental disease or defect. This plea may be joined with a plea of not guilty. If it is not so joined, this plea admits that but for lack of mental capacity the defendant committed all the essential elements of the offense charged in the indictment, information or complaint."

It appears that under sec. 971.06(1)(d), Stats., a defendant who pleads not guilty by reason of mental disease or defect does not actually have to join this plea with a "plea of guilty," because the plea "not guilty by reason of mental disease or defect" is itself a plea of guilty, an admission of the essential elements of the offense except mental capacity. In the instant case the defendant did enter a plea of guilty and the court explained the significance of the plea and accepted the plea. The finding of not guilty by reason of insanity "presupposes the conclusion that the defendant committed the acts charged." *Hill v. Burke,* 289 F. Supp. 921, 928 (1968). See also *State v. Hebard,* 50 Wis.2d 408, 420, 184 N.W.2d 156 (1971).

appealable as of right by the defendant. If this appeal is governed by pre-August 1, 1978 law, the finding and commitment, a final order in the criminal proceeding, is appealable pursuant to sec. 974.03, Stats. 1975.[4] If this appeal is governed by post-August 1, 1978 law, the finding and commitment, a final order in the criminal proceeding, is appealable pursuant to sec. 808.03(1), Stats.[5] Under both pre- and post-August 1, 1978 appellate practice and procedure the court of appeals has jurisdiction to hear the appeal.

In contrast, the majority reasons that there are two proceedings here. The first is the two-part criminal proceeding which ended in a finding of not guilty by reason of mental disease or defect. This finding is not appealable by the defendant, says the majority, because it is an acquittal. According to the majority, the second proceeding is the commitment proceeding which ended here in an order of commitment; this order is appealable, but

[4] Sec. 974.03, Stats. 1975:

"Appeals to supreme court; time for taking. In lieu of prosecuting a writ of error, either party may appeal to the supreme court in the manner provided in civil cases. The service of a notice of appeal or the issuance of a writ of error shall be made within 90 days after the entry of judgment or order appealed from. If a motion for a new trial has been made within the 90-day period, an appeal from the denial of the motion or from the judgment of conviction may be taken within 90 days after pronouncement of the order denying the motion or within 90 days after such motion is deemed overruled."

[5] Sec. 808.03(1), Stats.:

"Appeals to the court of appeals. (1) APPEALS AS OF RIGHT. A final judgment or a final order of a circuit court or county court may be appealed as a matter of right to the court of appeals unless otherwise expressly provided by law. A final judgment or final order is a judgment or order entered in accordance with s. 806.06(1)(b) or 807.11(2) which disposes of the entire matter in litigation as to one or more of the parties, whether rendered in an action or special proceeding."

review on appeal would not include any matters arising prior to the "acquittal."

The import of the majority opinion is that the defendant found not guilty by reason of mental disease or defect can never get review of the "guilt" phase of the trial. The majority says a finding of not guilty by reason of mental disease or defect is equivalent to an acquittal and that the defendant cannot appeal an "acquittal" because he is not an aggrieved party.

I cannot equate a finding of not guilty by reason of mental disease with an acquittal. In an acquittal the criminal proceeding ends. A finding of not guilty by reason of mental disease and defect does not end the criminal proceeding. The judge's finding of "not guilty by reason of mental disease or defect" renders the defendant subject to a criminal commitment proceeding.

As I see it, the defendant is thus aggrieved by the finding of not guilty by reason of mental disease or defect, but he cannot appeal as of right because the finding is not a "final order." The finding is the basis for the next step in the criminal proceeding, namely the criminal commitment hearing. The order relating to commitment is the final order under sec. 808.03(1), Stats.; it is the final disposition of the state's prosecution of the defendant.

The majority, relying on *State ex rel. Kovach v. Schubert*, 64 Wis.2d 612, 219 N.W.2d 341 (1974), and *State ex rel. Farrell v. Stovall*, 59 Wis.2d 148, 207 N.W.2d 809 (1973), concludes that the criminal prosecution ends with the non-appealable finding of not guilty by reason of mental disease or defect and that the commitment proceeding is an independent proceeding. *Kovach* and *Farrell* were criminal cases (one sex deviate, the other not) which raised the question whether the equal protection clause of the federal constitution required that the same protections be provided to the defendant in a

criminal commitment hearing as were provided in a civil commitment hearing.

Although *Kovach* and *Farrell* use the words "independent proceeding" the court was not thinking or speaking of independent proceedings in terms of appellate practice and procedure. The court was speaking of independent proceedings in terms of comparing the commitment proceeding to a sentencing proceeding and in terms of deciding what constitutional protections are required to order commitment. The court explained this position clearly in *Huebner v. State*, 33 Wis.2d 505, 526, 147 N.W.2d 646 (1967), upon which *Farrell* and *Kovach* rely, saying:

"We consider this commitment procedure so essentially different from penal sentencing as to amount to an independent proceeding which determines such important rights of the defendant unrelated to the determination of guilt that due process requires a hearing thereon as much as it does for subsequent hearings on the same issue."

As a result of the majority opinion, I suppose the accused must, after the circuit court enters an order denying the motion to suppress, petition the court of appeals, under sec. 808.03 (2), Stats., for leave to appeal the order. If leave to appeal is denied the accused must then decide whether to proceed with his plea of not guilty by reason of mental disease or defect, thereby losing his opportunity for review of the order denying suppression if he is committed under sec. 971.17, Stats., or withdrawing his plea of not guilty by reason of mental disease or defect, pleading guilty and obtaining review of the order denying suppression on appeal of the conviction.

In the instant case the defendant pleaded "guilty" in the first phase of a trial. According to the reasoning of the majority, if the defendant had pleaded not guilty, had been found guilty by a jury in the first part of the bifurcated trial, and had been found not guilty by rea-

son of mental disease or defect by a jury in the second part of the trial (sec. 971.175, Stats.), he could not have obtained appellate review of alleged violations of constitutional rights during the guilt phase of the trial. In contrast, an accused, whom a jury finds guilty and sane, can seek such appellate review. Under the reasoning of the majority, the accused who pleads not guilty and is found guilty by a jury would be forced to choose between seeking appellate review of alleged violations of constitutional rights which occurred during the guilt phase of the trial and pleading not guilty by reason of mental disease. The majority does not discuss the validity of a statutory scheme requiring an accused to choose between (1) appealing a jury verdict of guilty which defendant claims is invalid as denying him constitutional rights, and (2) continuing the trial on a plea of not guilty by reason of mental defect. I am concerned about the validity of forcing a defendant to make this choice.

I believe the majority has improperly cast the issue in this case as one of "appellate jurisdiction." I believe the issue is whether the defendant waived his right to seek review of the order denying the motion to suppress by his "plea of guilty."

Prior to the enactment of sec. 971.31(10), Stats. (effective July 1, 1970), the defendant would have waived his right of review, because this court had held that the right to review an order denying the motion to suppress is waived by a guilty plea. *Foster v. State,* 70 Wis.2d 12, 19, 20, 233 N.W.2d 411 (1975). In *Hawkins v. State,* 26 Wis.2d 443, 446–447, 449–450, 132 N.W.2d 545 (1965), we explained the waiver upon a guilty plea as follows:

". . . Upon his original pleas of not guilty, he had the right to a trial. If convicted by the use of evidence he had moved to suppress, he could have obtained a review by this court of the denial of his motion to suppress. By changing his pleas to guilty, he deliberately rejected that course. He had the advice of counsel who was aware

of the problem, having represented Hawkins on the motion to suppress. Hawkins' own statements before the circuit court made it clear that the choice was deliberate and that he was aware of the full range of penalties to which he was exposed. He felt, perhaps mistakenly, that pleas of guilty would be advantageous to him by persuading the court to impose a lighter sentence than would have followed a trial. Although he has raised questions as to the validity of the search which can be said to be arguable, invalidity does not clearly appear. We find nothing in the circumstances which would entitle him, as a matter of right, to be relieved of the consequences of his choice, or which would make it an abuse of discretion not to have done so.

". . .

"We are of the opinion, however, that a plea of guilty is properly deemed a waiver of the claim of unlawful search and seizure . . . [I]t does not seem unfair to require that if he wanted to litigate further his claim of unlawful search, he should have continued with his pleas of not guilty."

Sec. 971.31 (10), Stats., expressly changed the rule of waiver by providing as follows:

"An order denying a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a judgment of conviction notwithstanding the fact that such judgment was entered upon a guilty plea."

The reason for permitting an accused to enter a plea of guilty and to challenge the denial of his motion to suppress is to encourage guilty pleas and to reduce the number of contested trials when the only issue is whether or not the order denying a motion for suppression of evidence was proper.

The Judicial Council Comment to sec. 971.31 (10), Stats., explains the purpose of the section as follows:

"Sub. (10) is a new provision. It permits a defendant to appeal from a guilty plea when, prior to the entry of the guilty plea, the court had denied a motion to sup-

press evidence. On review, the appellate court can determine whether or not the order denying a suppression of evidence was proper. This subsection, based upon N.Y. Cr. Code s. 813-c, should reduce the number of contested trials since in many situations, the motion to suppress evidence is really determinative of the result of the trial. In such instances defendants usually are only contesting the legality of the search and not whether or not they did, in fact, possess the items seized. S. 974.-06 affords a complementary right to the state and should be read in conjunction with this subsection." 42A Wis. Stats. Annot. p. 266 (1971).

The majority is correct that sec. 971.31(10), Stats., speaks in terms of "appeal from a judgment of conviction." I interpret the majority opinion as holding, as a matter of statutory construction, (1) that the legislature intended sec. 971.31(10), Stats., to be a very limited exception to the general rule that a guilty plea waives the defendant's right to challenge the order; (2) that the section is not applicable here because there is no appeal from a conviction; and (3) that the defendant in the instant case waived his right of review of the order by a plea of guilty. I disagree with this interpretation of sec. 971.31(10). Several factors indicate that the legislature did not intend this narrow, restricted reading of sec. 971.31(10), Stats.

Sec. 971.31(10) was designed to alleviate an undesirable procedural "catch 22" which caused unnecessary over-burdening of trial calendars. Prior to the adoption of sec. 971.31(10), if the accused wished to challenge the legality of the use of the evidence, the accused had to subject himself and the state to a trial on the issue of guilt. Such a trial is a waste of time, money and manpower. Sec. 971.31(10) was designed to allow an accused to challenge the legality of the use of the evidence without having to endure a full trial on the issue of guilt and should be interpreted reasonably to accomplish this purpose.

This court has in a prior decision extended the application of sec. 971.31(10) beyond its specific terms to interpret sec. 971.31(10) *reasonably to accomplish its purpose.* In *State v. Meier,* 60 Wis.2d 452, 454, 210 N.W.2d 685 (1973), this court extended sec. 971.31(10) to encompass a defendant who enters a plea of nolo contendere, although sec. 971.31(10) speaks only of a plea of guilty. The court apparently concluded that a plea of nolo contendere has essentially the same effect in a criminal case as a plea of guilty and that it is logical to assume that the legislature intended sec. 971.31(10) to include a plea of nolo contendere even though the legislature failed to so state.

I believe the legislature used the word "conviction" in sec. 971.31(10), Stats., to convey the idea that the defendant will take the appeal after the litigation between the parties is concluded. In other words, the legislature wanted the defendant to appeal from the final judgment or order, not from the "intermediate" order denying the motion to suppress. Interpreting sec. 971.31(10), Stats., in this way, I conclude that a commitment on a finding of not guilty by reason of mental disease or defect has, for purposes of sec. 971.31(10), essentially the same effect as a judgment of conviction and should be treated as a conviction for purposes of sec. 971.31(10).

Because I conclude that the court of appeals has jurisdiction over the appeal and that the defendant has not waived his right to challenge the circuit court's order denying his motion to suppress, I would remand the matter to the court of appeals for a determination of the merits of the defendant's claim.

I am authorized to state that Mr. Chief Justice Beilfuss and Mr. Justice Heffernan join in this dissenting opinion.